UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | |
|---|---|
| In Re Paul Wojciechowski | ) |
| | ) 16-42442 |
| and | ) Ch 13 |
| Mary Wojciechowski | ) |
| Debtors | ) |
| _____ | ) |
| Susan H Mello LLC et al | ) |
| Plaintiff | ) 16-4087 |
| v | ) October 11, 2016 |
| Paul Wojciehowski | ) |
| et al, | |
| Defendants | |

Plaintiffs' Objection to the August 26.2016 Response

Come now Plaintiffs and object to the August 26, 2016 Response to the Amended complaint for the reason that it does not meet the rules, are insufficient as a matter of law, is not plausible and does not meet Twombly and should not be permitted by a Debtor in a bankruptcy filing where it contains known false claims unwarranted by law or fact, even when the true information was known or readily available.

As reason therefore Plaintiffs state as follows:

1 Under the rules a Plaintiff has a right to receive an Answer that meet the rules, sets out what are facts that have penitentiary support as factual allegations , .

2 Under Ch 13 especially S 1325 this court has a duty to review the statements of a debtor within the entire case .

3. The August 26, 2016 Response does not meet the rules and does not meet Twombly where under caselaw defenses need to set out a .plausible factual basis .

4. FRCP 8(b) provides

(b) Defenses; Admissions and Denials.

(1) In General. In responding to a pleading, a party must:

(A) state in short and plain terms its defenses to each claim asserted against it; and

(B) admit or deny the allegations asserted against it by an opposing party.

5. In par 8 to 10 Redden denies the existence of same signed fee agreement the represented payment and the August writing sent by her client (Ex 2).

6.. Despite having been reminded that Twombly applies to defenses and failure to state a claim is not a defense , makes intentional false statements directly contrary to the same <u>In</u> case Redden cited as referenced by her on August 22, 2016 which confirmed : :

Under Section 523(a)(2)(A), a debtor cannot obtain a discharge from any debt "for money, property, services ... to the extent obtained by — false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A) (2015). To prevail under Section 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:1. The debtor made a representation. 2. The debtor knew the representation was false at the time it was made. 3. The representation was deliberately made for the purpose of deceiving the creditor. 4. The creditor justifiably relied on the representation. 5. The creditor sustained the alleged loss as the proximate result of the representation having been made. In re Maurer, 256 B.R. 495, 500 (8th Cir. BAP 2000); Grogan v. Garner, 498 U.S. 279, 281, 111 S.Ct. 654, 655, 112 L.Ed.2d 755 (1991).

..For a representation to rise to the level of fraud for purposes of § 523(a)(2)(A), it must be false when made." In re Doody, 504 B.R. 527, 538 (D.Minn.2014) (citation omitted). A false statement under Section 523(a)(2)(A) must be made with the intent to deliberately[540 B.R. 429] and intentionally deceive the creditor. In re Blair, 324 B.R. 725, 729 (Bankr. W.D.Ark.2005). "A debtor's silence as to a material fact can constitute a false representation under § 523(a)(2)(A)." In re Juve, 761 F.3d 847, 851 (8th Cir.2014) (citing Matter of Van Horne, 823 F.2d 1285, 1288 (8th Cir.1987), abrogated on other grounds by Grogan, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755)).

Whether a creditor justifiably relies on a representation depends on the "qualities and characteristics of the particular [creditor], and the circumstances of the particular case." Field v. Mans, 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995) (discussing § 540 of the Restatement (Second) of Torts (1976) and stating that a creditor's reliance on a false statement is justifiable even when the creditor might have ascertained the falsity of the representation had the creditor investigated).

7. At page 5 Redden made known false claims that the bill was only on a Motion to modify. It was not ; it was on two adminstrative FSD/OCSE hearings, 3 petitions for review ; 2 contempt motions ( one directed to him for his failure to comply with the 2012 judgment obligations as to support and maintenance, a 401K and the domestic support hold harmless obligations of paying the second mortgage, and the other by him); a motion to determine the amounts of unpaid medical expenses due to turn it into a judgment to be collected on directed to him; , as well as discovery and ongoing advice and consultation, a motion to enforce, and attorneys fees litigation , dedicated discoverydirected at and by him , vigorous opposition where in his own words Debtor wanted to proceed even once it wwas confirmed it would be "long"and "ugly", where Redden had full free access to the docket sheet, the bill and where as Debtor could have confirmed in the course of the representation Debtor sent the undersigned over 480 emails, in addition to calls and in person meetings.

8  At page 5 Redden who had full free access to the actual filings made known false statements about the amendments and supplements as if to question them . If she had and compared to the bill would see the undersigned did not bill for any corrections and the amendments and supplements were not for corrections and instead:

A.  The November 2014 amended Motion to modify which was not to make correction s but to add a separate count 2 in equity to try to undo the 2012 judgment saving the Debtor the cost of filing a separate petition in equity by adding it as a count to the pending motion with leave of court;

B. The Supplemental Notice of the deposition dated 1/15/2015 was not due to an error but to document the efforts made to get a deposition date that as the docket sheet shows had to be ordered for the other side to attend

C The 1/27/15 Supplemental Notice( which was entered by the clerk before they allowed the lawyers to do the docket entries when the state went to e filing on St Louis county divorce cases), was not due to an error but was to include the USPS receipt for the mailing after there was a claim it had not been sent, which was a pre condition to fees in the 2012 judgment

D The 3/27/15 supplemental Motion was not an error but anupdate to the existing Motion that Petitioner failed to answer questions at the ordered March 25 deposition that related to the issue of what was owed for medical expenses, an issue resolved in the December 10, 2015 consent order

E. The 4/21/15 amended Motion to modify for which leave was given was not to correct errors but to raise new issues including on the information learned in discovery that his former wife

had been working and to add a third count as a petition for review on the administrative hearing from January 2015.

F The second 4/28/15 amended Motion to modify was not due to errors but to include the second administrative decision in Count 3 that was received between 4/21 and 4/28

G The amended Motion to quash dated 5/20/15 was to correct the name of the bank where it was sent not to US Bank but to Bank of America the bank for Mary Wojciehowski , and withdrew same at no charge

H The amended property and income statements in June 2015 and November 2015 were not due to error but are required by the court to see that b current information was in the file for the June and then December 2015 trial dates

I The amended exhibit lists, that was to due to the fact had to add exhibits as got them from the debtors who failed to provide them in a timely manner.

J The 1/4 /16 supplemental memos were not done to correct errors but to add issues learned including where learned the same lawyer had been on the losing end of an appeal on the same issues she was still raising and to prepare a demonstrative exhibit of cutting and pasting their bill in conjunction with the docket entries .

K The 4/1/16 supplement was not to correct errors to add a case in the 4/1/16 ESQ publication as decided in march 2016 after the submissions as are to do for the court to have current caselaw

9. Redden made further false claims that the Motion for contempt directed to Paul Wojciechowski was limited to the second mortgage (EX 3), and instead as a click on her computer mouse could have told her, it was directed at 3 issues, the failure to pay the child support and maintenance, the failure to pay the second mortgage, and the failure to take care of the QDRO on the 401K.

10. Redden , falsely called the obligation to pay the second mortgage "moot"as discharged by the 2007 bankruptcy . She would know better , that the inclusion in the 2012 divorce judgment and 2015 modification judgment made it a new debt owed to the former wife and made it a domestic support obligation that under S 1325 has to be paid especially where it is part of a hold harmless obligation in a divorce . EX 4 .

   a The claims of Redden are contrary to

- <u>Wallace v Marble</u>, 426 B.R. 316 (8th Cir. BAP 2010)

https://www.courtlistener.com/opinion/1901581/in-re-marble/. where it was held the hold harmless agreement creates a new debt that is is a DSO stating

> .. Marble fundamentally misunderstands the nature of the debt that Wallace is seeking to except from discharge. Marble is correct that Wallace's original debt to the insurance company arose out of the indemnity agreement with the insurance company prior to the state court's dissolution order. However, Marble's debt to Wallace arises from his obligation to hold her harmless under the indemnity agreement in the judgment for dissolution of marriage, creating a new debt. The debt was therefore clearly an obligation that arose in or was made in connection with a separation agreement. See Williams v. Williams (In re Williams), 703 F.2d 1055, 1057 (8th Cir. 1983) ("[U]ndertakings by one spouse to pay the other's debts [. . .] can be `support' for bankruptcy purposes."); Burton v. Burton (In re Burton), 242 B.R. 674, 678 (Bankr.W.D.Mo.1999) ("a `new' debt is created between a debtor and his ex-spouse when, pursuant to a divorce decree, the debtor is ordered to assume a credit card debt incurred jointly during the marriage and ordered to hold the ex-spouse harmless for that debt.").

  b Redden's contentions are further contrary to

<u>In re Phegley</u>   BR__, . 09-44269  ( WD MO 2010)

http://www.mow.uscourts.gov/bankruptcy/opinions/dow/phegley.pdf:A

which confirmed:

Pursuant to 11 U.S.C. § 101(14A), the term "domestic support obligation" means:

[A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title,

that is-(A) owed to or recoverable by-(I) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or . .

(B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

©) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of-

(I) a separation agreement, divorce decree, or property settlement agreement;

. . .

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

.... For purposes of the case at hand, discharge is at issue. Domestic support obligations are not discharged in Chapter 13 proceedings.

See   11 U.S.C. § 1328(a) and 11 U.S.C. §523(a)(5). Further, domestic support obligations are priority claims pursuant to 11 U.S.C. §507(a)(1)(A)....The BAPCPA amendments that added § 101(14A) and altered §§ 523(a)(5) and (15) did not change the standard for whether an obligation is in the nature of support. Id.

When deciding  whether a debt should be characterized as one for support or property settlement, the crucial question is the function the award was intended to serve.Adams v. Zentz , 963 F.2d

197, 200 (8th Cir. 1992);Boyle v. Donovan, 724 F.2d 681, 683 (8th Cir.1984) (citingWilliams v. Williams (In re Williams), 703 F.2d 1055, 1057 (8th Cir.1983));see Kruger v. Ellis (In re Ellis), 149 B.R.925, 927 (Bankr. E.D. Mo. 1993) (finding that in order to determine whether an award represents a property settlement or a maintenance obligation, a court must look to the function an award was intended to serve).   Factors considered by the courts in making this determination include: the language andsubstance of the agreement in the context of surrounding circumstances, using extrinsic evidenceif necessary; the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party oranother receives the marital property; the periodic nature of the payments; and, whet her it wouldbe difficult for the former spouse and children to subsist without the payments.Morgan v. Woods(In re Woods), 309 B.R. 22 (Bankr. W.D. Mo. 2004);

In re Tatge, 212 B.R. 604, 608 (B.A.P. 8thCir. 1997); Schurman v. Schurman (In re Schurman)

, 130 B.R. 538, 539 (Bankr. W.D. Mo.1991) (citing In re Gianakas , 917 F.2d 759 (3d Cir. 1990))...Exceptions from discharge for spousal and child support deserve a liberal construction,and the policy underlying § 523 favors the enforcement of familial obligations over a fresh start for the debtor, even if the support obligation is owed directly to a third party.

See Holliday vKline (In re Kline), 65 F.3d 749 (8th Cir. 1995);Williams v. Kemp (In re Kemp), 242 B.R. 178,181 (B.A.P. 8th Cir. 1999), aff'd 232 F.3d 652 (8th Cir. 2000).  end of quote

   c,. Redden's claims are also  contrary to  <u>In Re  Younes</u>  Bankruptcy No. 14-01792. Adversary

 No. 15-09008,545 B.R. 591 (2016)http://www.leagle.com/decision/In%20FDCO%2020160210G58/IN%20RE%20YOUNES,

 where it was  confirmed this includes

 ..the   hold  harmless   clausesto pay a mortgage, that it becomes  its own  new  debt , and  it is not dischargeable .      ... 523(a)(15) states that a discharge under § 727 does not discharge debts to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit...

§ 523(a)(15). This statute "is written broadly and prohibits discharge of virtually any obligation that arises from a divorce proceeding." Hoefer v. Hoefer (In re Hoefer), No. ADV 13-09073, 2014 WL 6624311, at *3 (Bankr.N.D.Iowa Nov. 20, 2014). That obligation must, however, be owed "to a spouse, former spouse, or child of the debtor." Id.

Here, the primary dispute is about whether the debts are "owed to" Plaintiff. The Court has previously addressed this issue in Hoefer. See id. There, the parties, who were ex-spouses, had entered into a dissolution agreement with a hold harmless or indemnification provision. Id. at *1. That agreement allocated a vehicle debt to one of the spouses. Id. That spouse later filed bankruptcy and sought to discharge the vehicle debt. See id. The Court found that the agreement —[545 B.R. 596]specifically the hold harmless or indemnification provision — had created a new debt between the parties. Id. at *3. The Court also found that the exception did not apply to

Debtor's direct obligation to a third-party creditor. Id. The Court reasoned that [t]he debt to Capital One did not arise from the dissolution decree and therefore does not fall under § 523(a)(15) even though the divorce proceedings address it. The debt between the former spouses that related to the vehicle, however, did result from the dissolution agreement. This debt, resulting from the hold harmless agreement, is the only nondischargeable debt related to the vehicle. Therefore, the Court concludes that any obligations under the hold harmless or indemnification provision cannot be discharged under § 523(a)(15), but that does not include any debt owed from Debtor directly to Capital One.

Debtor attempts to distinguish Hoefer on the basis that it addressed a consented dissolution agreement, not a court imposed allocation. The Court does not find this distinction relevant to whether or not a new debt was created. The law is well-established that a hold harmless or indemnification provision in a divorce decree creates a new debt. See Wallace v. Marble (In re Marble), 426 B.R. 316, 319 (8th BAP Cir.2010); see also In re Hoefer, 2014 WL 6624311, at *3 ("A requirement in a divorce decree to hold harmless or indemnify a spouse for joint obligations during a marriage creates a `new' debt, running solely between former spouses."). Moreover, § 523(a)(15) includes debts "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement." § 523(a)(15) (emphasis added). It expressly contemplates both scenarios. That the court imposed the allocation, rather than the parties agreeing to it, is irrelevant to whether the debt is dischargeable under § 523(a)(15). end of quote

iv . It is also contrary to other cases such as  In Re Thomas   BAP     ( 6th Cir  2014):

T]he majority of courts considering whether a mortgage debt assumed

    by or ordered to be paid by a debtor pursuant to a judgment of divorce

    have held that such an obligation is in the nature of "support." ...

    In re Johnson,        397 B.R. at 297–98 ("Numerous courts have held that an obligation

    that is essential to enable a party to maintain basic necessities or to

    protect a residence constitutes a nondischargeable support obligation."

    (collecting cases)). And although the divorce judgments before some

    courts included a hold harmless clause, the absence of such a clause

    here is not dispositive. In re Trump, 309 B.R. at 593–94 ("Even absent

    [hold harmless or indemnification] language, the Agreement created

    a legally enforceable obligation for [the debtor] to make payments on

    the second mortgage note.")..

.Hoefer to be well supported. See e.g., Jaeger-Jacobs v. Jaeger-Jacobs (In re Jaeger-Jacobs), 490 B.R. 352 (Bankr. E.D.Wis.2013); Reinhardt v. Reinhardt (In re Reinhardt), 478 B.R. 455 (Bankr. M.D.Fla.2012end of quote

D The known facts where as in the 2012   2012  Form 14, (Ex 4) shows  the former wife had zero income, and was found in need of maintenance.  She was also  shown as the first borrower, such that to have the debt  unpaid would harm her and the ability to  provide for the children by adversely impacting her ability to have   proper credit . and

10.  Redden    makes more   odd false claims not of  facts but  contentions   that it would be "inconceivable" could  justify  the hours, shows  that Redden  had not   even  reviewed the   actual  filings  on  fees  and persisted  in same  even where   family law  cases are time intensive. (as noted above   Debtor  himself  sent over 490  emails  to  Plaintiff on  frequent  basis   even on day to day  interactions with the children, calling her when his former wife was 4 minutes late for a visitation start time .

Redden   further made claims she had to know were false about the Hais bill where there is no comparison where as as in a cut and paste  December 29    exhibit of their bill, in the underlying case , Plaintiff   demonstrated how the Hais bill did not match the docket entries   (Ex 6)  where even when there was discovery and motions,the bill did not reflect any such time .

Redden also ignored publicly available facts on how Hais firm holds itself out as providing a  vigorous   representation , such that in another cases as affirmed on appeal , the   fees they caused the other side was not $31,000, but $88 where the docket entry is July 2011includes

Petitioner shall pay directly to Respondent's attorney the sum of $88,675 as and for a portion of Respondent's attorneys' fees, etc.. Findings and recommendations of the Commissioner approved

and adopted as the Judgment of the court by Judge John R. Essner. Copies mailed to parties and their respective attorneys. Costs taxed against movant, Petitioner.

08SL-DR07370 - KAREL R SCHUBERT V KAREN S SCHUBERT

as affirmed in Schubert v Schubert, 366 S.W.3d 55 ( Mo App ED 2012) .-

11.It is further is Redden who would know she would be the one unable to challenge the fees where as in the sworn answers ( EX 7) has no expert on the market rates in the community and has claimed the only persons with knowledge are the two debtors .

This is especially so where one of the main factors on fees is the market rate :

a.as in <u>Missouri v Jenkins</u> __ US __ 1989:citing <u>Blum v. Stenson</u>, 465 U.S. 886 (1984), `reasonable fees.(where on civil rights cases it was confirmed) .are to be calculated according to the prevailing market rates in the relevant community . . . ." Id., at 895.

b As in Mo rules on fees ( 4-1.55) the main factors on reasonableness include (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;.. (3) the fee customarily charged in the locality for similar legal services;(4) the amount involved and the results obtained; 5) the time limitations imposed by the client or by the circumstances;

c As in <u>Ferguson v Lincoln University</u> , __ SW3d__ ( Mo App WD 201_-):

on the determination of reasonable attorneys' fees. . . a number of factors to be considered: (1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably expended on the litigation; (3) the nature and character of the services rendered; (4) the degree of professional ability required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition.

As Debtor admits it was a hard fought with a number of motions filed , a number of complicated issues on a representation made more difficult by the Debtor who had a very hostile and antagonistic relationship with his former spouse; whose daughter refused to see him because as she stated she did not like he treated her; for a client who was very demanding and

could not seem to manage what was needed for co-operative parenting ; where both parties changed jobs that impacted the financial issues and where Debtor would not follow directions even to make good faith payments on the child support and instead by his own admission while a Motion for Contempt was pending failed to make any payments on the child support from June 2015 to September 2015 ; and was insistent on facts that did not pan out such his son wanted to live with him, his counsellor would cooperate and help and where Judge Essner uses a federal form scheduling order that adds substantially to the time,.

13   Redden   makes more baseless false claims about the amount of bill for the other law firm is not appropriate where

   a As in the court file, the bill for that firm (Ex 6) leaves out time for preparing filed Motions and seems to have little if any communication from their client;

   b That firm did not prevail ;

   c. That firm did not have the burden of proof

14.Redden makes the specious claim the services were inadequate at the same time as seeming to claim they were excessive where in difficult case

 Redden knew Plaintiffs prevailed for the debtor on all issues

   - obtained added custody time

- obtained 2 more tax exemptions

- obtained a correction to the medical expense payment procedure to require copies

-obtained a reduction fro $23xx to $19xx/mo of his monthly payments terminating maintenance

- avoided any order for payment of college tutition for the children

- avoided any order for payment of attorneys fees

-avoided an assessment of GAL fees in proportion to income

- obtained a settlement on the arrearage where he saved est $20,000 when they told the $9378 in a tax refund he obtained by using the unused tax exemptions awarded to his former spouse in lieu of the child support and maintenance that was due

-obtained the assistance of DRS and its counselors

- avoided a finding of contempt and obtained an added 12 months to refinance the second mortgage


15. Redden made baseless claims about failure of consideration which is not a defense in Missouri in that

a, By statute ( 431. 020) provides all written agreement are deemed to have consideration ,

b. As in <u>MFA v Dettler</u>, 817 SW2d 658 ( Mo App 1991) consideration can be a benefit ot

a loss to the other side and

  c As in <u>Radford v Radford</u>, 388 SW2d 33 (Mo 1965) the term "failure of consideration" means it was one there and then ceased to exist and became worthless, Here that would not be possible, Debtor would have to go back to paying the $23xx/Mo; to drop the added visitation, to amend the 2015 tax return to not use the exemptions and pay the arrearage he owed.

  16 Redden further repeats the false claim of assumption of the risk even after reminders :

  A In Missouri cannot assume the risk for an intentional act of fraud . Assumption of the risk is a defense primarily for physical torts akin to Gustafson and Coomer contributory negligence cases , . As stated in <u>Alack v. Vic Tanny Int'l of Missouri, Inc</u>., 923 S.W.2d 330, 337 (Mo. banc 1996).

.. even when the plaintiff consents unambiguously in writing, this
Court will refuse to enforce such consent in so
me situations because "one may never exonerate
oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest."

  B Redden's claims would be contrary to public policy where as a matter of public policy as in <u>Roberds v Sweitzer</u>, 733 SW2d 444 ( Mo app 1987) and <u>Schecter v Fiztesummons</u> , 627 SW 2s 89 ( Mo App 1981) and <u>Satterfield v Southern Railway</u>, 287 SW 2d 395 ( ). lawyers are to be paid with there even statutes for a lien . and implied duties to pay for fees where the work is done at the request of the client and/or the result is accepted.

C. Redden's claims are contrary to Mo rules for lawyers that are included in the local rules in her odd contention Plaintiffs should have withdrawn and left the Debtors stranded. Instead the rules permit an attorney to withdraw only is after notice they fail to substantially fulfill he obligation and once Plaintiffs agreed to the $300 payment plan ,(Ex 2) had no right to withdraw .

where the rules provide - RULE 4-1.2: S

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to Rule 4-1.2(c), (f) and (g), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter

and

- .. RULE 4-1.16: a lawyer may not withdraw unless it can be accomplished "without material adverse effect on the interests of the client" and may withdraw if the client "substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled" .

Here as Redden knows Plaintiff could not have withdrawn where on which while Plaintiff gave that notice in EX 2 Debtors then made further representations and entered into the small $300 payment

17 . Redden claims Debtor had limited resources, are not true, he had more resources than most persons; he had contributions from his new spouse where she contributed to shared living expenses; they both had 401ks; she had her tax refund in 2014 and in 2015 they received a $73xx tax refund; they have a combined income of over $10,000 a month; they had her residence that she bought for $83,000 in 2012 they could have sold or rented out; and where he is in information technology he could likely have easily worked as a weekend consultant in addition to his 9 to 5 job .

18  This is even more questionable where as essentially confirmed in the August 2016 schedules where they made some correctons and did not correct the initial creditor matrix, under oath showed Plaintiff as owed $31,xxx with the bill as undisputed , which as a stateent under oath to the court as a matter of judicial estoppel would be binding on the debtors.   EX 1

Wherefore for these reasons, Plaintiffs object to the Response and requests all relief .

By /s/Susan H Mello

Respectfully submitted

By __/s/ Susan H Mello

    Susan H. Mello #3841/31158

    Susan H Mello LLC

    7751 Carondelet, Suite 403

    Clayton, MO 63105

    (314) 721-7521

    (314) 863-7779 FAX

    Pro se and Attorney For

    Plaintiff Susan H Mello LLC

Certificate of service

The undersigned confirms that she eserved a copy on D Daugherty and A Redden by e service and understands the Notice of Electronic filing is being corrected to see that the entry of Ms Daugherty is entered into the system and as such other than what was mailed all necessary parties are served with this documents via the Court's CM/ECF system on the _31_ day of ___August __ 2016  /s/ Susan H Mello